SPEAR and RIPLEY, Appellants, *vs.* CHARLES WARDELL and others, Respondents.

The assignment which a debtor proceeded against under the non-imprisonment act, executes pursuant to the provisions of that act, (*Stat.* 1831, § 16, 17) is for the benefit of the creditor who institutes the proceeding, and not of the creditors generally.

And a *voluntary* assignment, executed by such debtor, while the proceeding is pending against him, of all his property for the benefit of all his creditors without preference, is a fraud upon the act and the rights of the prosecuting creditor.

Where a judgment creditor instituted a regular and valid proceeding under the non-imprisonment act, and the debtor, while the proceeding was pending, executed a voluntary assignment of all his property for the benefit of his creditors generally without preference, so that no property passed into the hands of the statutory assignee under the statutory assignment subsequently made ; *held*, upon a bill filed by the creditor against the debtor and the voluntary assignee, that the voluntary assignment should be allowed to stand, but the assignee should be decreed to hold the property assigned, as a trustee for such creditor to the extent of his demand.

*Held* also, that the title to the property having passed to the voluntary assignee, the statutory assignee had no interest, which made it necessary to join him as a party to the bill.

Appeal from the Court of Chancery. This case was brought to hearing, before the Chancellor, upon the bill filed by the appellants, and the joint and several answers of the respondents. The material facts were these : The appellants, on the 2d November, 1846, recovered judgment in the Supreme Court against Charles Wardell and Charles E. Wardell, two of the defendants, for $1,376,97 upon contract. The said Charles Wardell and Charles E. Wardell were partners in trade, and the judgment was for a partnership demand. On the 5th of November they were possessed of notes and accounts to an amount more than sufficient to pay the judgment, and on that day they were requested to apply some of· such notes and accounts to that purpose. This they refused to do upon the ground (and so were the facts,) that they were insolvent to a large amount, that a committee of their creditors had recommended that the creditors accept, as a compromise

of their claims, a per centage upon the amount due them, and in case they did not all agree to do so, then that they intended in good faith to assign all their property to pay their debts without preference.

After this refusal, and on the same day, the complainants procured, from EDMONDS, Circuit Judge, a warrant against the said Charles Wardell and Charles E. Wardell, and had them arrested pursuant to the 4th section of the act to abolish imprisonment for debt and to punish fraudulent debtors. (*Laws of* 1831, *p.* 396.) After their arrest, but before the decision of the officer, to wit: on the 21st day of November, 1846, they made a voluntary assignment of all their estate, real and personal, to Henry B. Wardell, the other defendant. On the 28th of November, the Circuit Judge decided that the allegations of the complainants were substantiated, and that the said Charles Wardell and Charles E. Wardell had unjustly refused to apply their choses in action to the payment of the judgment. A commitment was accordingly ordered pursuant to the 9th section of the act; to prevent which, they severally made and delivered to the officer an inventory of their respective estates, and an account of their creditors, pursuant to the 3d subdivision of the 10th section of the act. These inventories contained none of the choses in action which had belonged to them as partners, nor any other partnership effects. Such further proceedings were had, that an assignment was directed by the officer pursuant to the 16th section, which they accordingly made to *Stephen P. Nash,* who was appointed assignee by the officer. On the 22d of December, 1846, they were discharged, according to the 17th section. No property passed into the hands of the assignee so appointed, except $30 in money, the residue of their effects, except such as were by law exempt from execution, having previously passed into the hands of Henry B. Wardell, under the voluntary assignment to him above mentioned. The complainants opposed the discharge of the debtors, on the ground that their proceedings were not just and fair, insisting that

19

the said voluntary assignment was a fraud upon the act. But the objection was overruled by the Circuit Judge.

After these proceedings were closed, the complainants applied to Henry B. Wardell, the voluntary assignee, to have their judgment paid, in preference to other creditors, out of the notes and accounts which went into his hands under the assignment to him. He refused to make such payment, or to give any preference over other creditors. The bill insisted, that by the proceedings under the act aforesaid, the complainants had acquired a lien upon, or right to priority of payment out of the choses in action of the said Charles Wardell and Charles E. Wardell, that such lien or right attached *as of the time they were arrested*, that the voluntary assignment made to Henry B. Wardell was a fraud upon the act, and therefore void; or if not so, that he took the choses in action assigned to him subject to such lien or right. The answer controverted these positions. The prayer of the bill was, that the assignment to Henry B. Wardell might be set aside as a fraud upon the act and upon the rights which the complainants had acquired by their proceedings; or, if allowed to stand, that the complainants might be paid the amount of their judgment out of the choses in action so assigned, or the proceeds thereof, in preference to other creditors, and for an injunction, receiver, &c.

The Chancellor made a decree dismissing the bill with costs.

*S. P. Nash*, for appellants. 1. The creditor who has obtained the commitment of a debtor, under the non-imprisonment act, is entitled to a preference over creditors at large in the distribution of the debtor's property under the act. (*People vs. Abel*, 3 *Hill* 109; *Berthelon vs. Betts*, 4 *Hill* 577; *Moak vs. De·Forest*, 5 *Hill* 605; *practical directions under the non-imp. act, (pamph.) p.* 15.) 2. It follows that any voluntary disposition by the debtor, pending the proceedings, in order to defeat such preference, is a fraud upon the statute, and a Court of Equity has jurisdiction to protect the creditor's rights, and set aside the fraudulent act. 3. This jurisdiction

can only be exercised on behalf of the creditor whose priority has been overreached. He is therefore the proper party complainant. 4. The decree of the Chancellor should be reversed, and the defendant, Henry B. Wardell, be directed to pay the complainant's judgment with interest and costs.

*J. S. Bosworth,* for respondents.

WRIGHT, J. The important question in this case is, whether a voluntary assignment of property for the benefit of creditors generally, made by a defendant after his arrest and during the pendency of proceedings under the act "to abolish imprisonment for debt and to punish fraudulent debtors" is a fraud upon such act, and upon the rights of the prosecuting creditor thereunder. An examination of the objects and aims of the statute of 1831, and its peculiar, and, generally admitted, quite imperfect provisions, is involved in the inquiry.

Its professed objects are, to abolish imprisonment for debt and to punish fraudulent debtors. But it goes further ; aiming to provide to the prosecuting creditor of such fraudulent debtor a remedy for enforcing the payment of his demand. Whilst as a civil remedy (and only as such I shall consider it) it takes from a certain class of creditors the power of coercing from all debtors satisfaction of their demands by imprisonment, it gives, with a single exception, to the creditors of such class, who may prosecute, and who shall pursue its provisions, as against a fraudulent debtor, a new remedy, which, in its operation, continues the power of coercion by imprisonment in a severer form, unless the debt shall be paid, or all the debtor's property, legal and equitable, be set apart, in the form prescribed, for its payment. In the exception alluded to, where the particular fraudulent design established against the debtor is, that he is about to remove any of his property out of the jurisdiction of the Court in which the suit of the prosecuting creditor is brought, it continues such coercion by imprisonment, unless the debtor shall, in effect, indemnify the creditor against the commission (until the demand of the pro-

secuting creditor, with costs, shall be satisfied, or until the expiration of three months after a final judgment shall be rendered in the suit brought for the recovery of such demand) of certain fraudulent acts, tending to impair or destroy the creditor's remedy against the property held by the debtor at the date of such indemnity. The new remedy is not given to *all* who may have demands against the debtor arising upon contract, but only to those who shall have commenced a suit against the debtor, or shall have obtained a judgment or decree against him in a Court of Record; and considering that a leading purpose of the act was to abolish imprisonment on demands *ex contractu*, there was a fitness and propriety in confining the new remedy to the two classes enumerated, for they were the only persons who could arrest and imprison on the demand itself, or could be *immediately* affected by the abolition of the old remedy. As against the honest debtor the act absolutely abolishes imprisonment; but against the dishonest one, it provides that imprisonment, as a remedy or means of coercion shall still exist; to be avoided by the payment of the debt or demand by the debtor, or by his giving satisfactory security for its payment, or by justly and fairly setting apart his property, legal and equitable, for that purpose; and in one class of frauds, by indemnifying the prosecuting creditor against the commission of certain fraudulent acts, whilst such creditor is prosecuting his demands against him to judgment, and until three months afterwards. Imprisonment is to follow the fraudulent debtor's conviction, unless in the mode prescribed, the demand of the prosecuting creditor shall be paid, or payment secured, or the debtor's property delivered up to satisfy such demand; or the debtor indemnify the prosecuting creditor against a fraudulent disposition, within a specified period, of the property he may then have. And if such debtor be committed to prison, he shall remain in custody in the same manner as prisoners on criminal process, "until a final judgment shall have been rendered in his favor in the suit prosecuted by the creditor; at whose instance such debtor shall have been committed, or until he shall have assigned his pro-

perty and obtained his discharge," but he may be discharge l at once, without assignment of his property, by payment of the debt or demand, or giving security for the payment thereof. As against a fraudulent debtor, the provisions of the act, are, in the language of Justice Cowen in the case of *Berthelon* vs. *Betts* (4 *Hill* 577), "in effect, a statute execution against choses in action and other effects not tangible by the ordinary *fi. fa.*. The statute gives the creditor or creditors certain process by which he or they may coerce the payment of a debt or debts for which the debtor has been prosecuted."

After a careful examination of its provisions, this is the construction that I place upon the objects and intent of the act as a civil remedy. For if the object be not to coerce from the fraudulent debtor the payment of the debt or demand of the creditor or creditors who are permitted to institute proceedings, but, as is contended, only an assignment of the debtor's property for the benefit of creditors at large, then is it worthless as a remedial statute, and the aim of the legislature in providing a punishment for fraud, or a severer remedy to coerce the payment of demands *ex contractu* against a fraudulent debtor, is entirely frustrated; for what creditor with the object only in view of coercing an assignment of an insolvent or fraudulent debtor's estate, which should enure to the benefit of all creditors, would institute proceedings under the act? In construing remedial statutes, Courts should endeavor, in consistency with established rules of construction, to impart to them the force and efficacy contemplated by the Legislature.

I propose briefly to examine in detail those sections of the act having a bearing on the question involved in this case. Such examination, unless I am clearly mistaken, will serve to fortify the views I have taken of the act as a civil remedy. The third section points out only two classes of persons that may institute proceedings; and they, as has been remarked, are the only ones *immediately* affected by the operation of the first section. Unless a creditor falls within one or the other of these classes, he cannot institute a prosecution. There is

no provision for the coming in of other creditors under the proceedings instituted by either class, nor a joinder of several creditors of the specified classes. At the outset the proceeding is an individual one, contemplating an individual benefit, and looking ultimately to the furtherance of two ends, viz: punishment of fraud, and individual interest. The warrant issues to arrest *the defendant in the suit* which the prosecuting creditor has commenced against him in a Court of Record, or in which he has obtained a judgment or decree; this peculiar statutory arrest being given, in such suit, against a fraudulent debtor, in lieu of the remedy taken away of arrest in the one case on *mesne,* and in the other on *final* process.

The causes specified in the fourth section for granting the warrant to arrest the debtors, are such as may apply to individual creditors, but some of them such as would not ordinarily apply to all creditors. Indeed, those specified in the first and fourth subdivisions of the section, have no application to any other creditor than the one prosecuting, nor any relation to any other suit than the one in which such creditor is prosecuting the debt or demand due to him from the defendant, or in which he has obtained a judgment or decree. Consequently, if the construction of the act be correct that the prosecuting creditor obtaines no preference, but that the assignment which follows is for the benefit of the creditors at large, the anomaly is presented of a result flowing from a cause with which it has no possible connection, and without which, the officer granting the warrant would have no jurisdiction to entertain the proceeding, or order the assignment. So, also, it seems to me very apparent that the causes specified in the second subdivision of the section have no application to creditors generally. The causes are, "that the defendant has property or rights in action which he fraudulently conceals, (that is, the defendant in the judgment or decree of the prosecuting creditor) or that he has rights in action, or some interest in any public or corporate stock, money or evidences of debt, which he unjustly refuses to apply to the payment of any judgment or decree which shall have been rendered against him, belonging to the complainant." The subdivision

applies exclusively to a case wherein the prosecuting creditor has obtained a judgment or decree against his debtor, and he has " property or rights in action which he fraudulently conceals," or on application by such creditor, such debtor unjustly refuses to apply his equitable assets to the payment of such judgment or decree.    There must, therefore, be an unjust refusal, on the part of the debtor to apply his property that an ordinary *fi. fa*, cannot reach, *to the payment of the judgment or decree of the prosecuting creditor;* without which, for wan of jurisdiction in the officer the proceeding would be void. It contemplates a charge that none but the prosecuting creditor, either at the initiation of the proceeding, or at any other time, can make, and has reference to the payment of *his* debt, and no other.    If, by substantiating the charge, and arresting the debtor and thus compelling an assignment of his property, the prosecuting creditor acquires no right of priority under such assignment, or no right attaches in his favor on the debtor's property, but the same is to be distributed *pro rata* amongst his creditors, it seems to be a very absurd mode of accomplishing the result.

The remaining sections aim especially at securing the rights of the prosecuting creditor.    By the seventh section the debtor may controvert any of the facts and circumstances on which the prosecuting creditor's warrant issued.    The latter alone may examine the defendant touching facts material to the inquiry ; the debtor and such creditor are the only parties that may offer proofs ; and if the debtor obtains an adjournment of the proceedings, the •bond shall be given to such creditor, and its penalty shall be in double the amount of the debt that *he* claims.    The proceedings prescribed in the tenth section for averting a commitment, respect only the prosecuting creditor, and his debt or demand.    If such debt or demand, with costs, be paid by the debtor, or security be given for such payment within sixty days, no commitment is to be granted, and the proceedings are at an end.    No other creditor can continue them for his own benefit, or with the view of coercing an assignment.    The debt or demand claimed in the pend-

ing suit, or by the judgment of the prosecuting creditor, being paid, the operation of the new remedy, in lieu of the old one of imprisonment, consequently ceases. So, also, the bonds prescribed by such section are to be given to the prosecuting creditor, and in penalties twice the amount of *his* debt, showing that the entire section has relation to the satisfaction or security of his interests alone. By the eleventh section, the debtor being committed to prison, can only be discharged by the performance of acts, or the happening of a contingency, having relation exclusively to his connection with, or a right gained by the prosecuting creditor. Such debtor is to be discharged in case final judgment shall be rendered in his favor in the suit of the prosecuting creditor, as he would have been if imprisoned under the abolished remedy on *mesne* process. So also if he pays the debt or demand of the prosecuting creditor, or gives security for its payment, or executes to him either of the bonds mentioned in the tenth section, or justly and fairly assigns all his property by which payment of the prosecuting creditor's debt may be secured or enforced.

By the fourteenth section the prosecuting creditor is the *only* person who is to have notice of the time and place of the debtor's presenting a petition for an assignment of his property, and for a discharge, and on whom copies of such petition, and the account and inventory thereto annexed, are to be served. By the twenty-fourth section, whenever a bond to avert a commitment, given under the tenth section, shall become forfeited by the non-performance of the condition thereof, it may be sued by the prosecuting creditor only, and he may recover on it the amount of his claim; and there is no provision for the recovery on such bond of the claims of other creditors. By the act, as amended in 1845, the debtor, instead of assigning his property, may be discharged from imprisonment upon his putting in and perfecting special bail in any suit which shall have been commenced against him by the prosecuting creditor, whether a judgment or decree shall have been obtained thereon or not; and having thus put in and perfected bail, and obtained his discharge, he may be impri-

Spear *v.* Wardell.

soned upon any execution issued against his body, in such suit in the same manner, as though the act of 1831 had not been passed.

Thus is kept constantly in view a right attaching to or acquired by the creditor who initiates the proceeding and pursues the debtor. The provisions of the act, step by step, aim at the satisfaction of his debt or demand. He alone is to have notice of the various steps the debtor may take to avert commitment, or in obtaining his discharge; and he alone is to be charged with the costs and expenses which the debtor shall have incurred in the event of a dismissal of the complaint.

But it is insisted, that, notwithstanding the debtor be arrested in the suit of the prosecuting creditor only, that up to the conviction, no person but such creditor can take any part in the proceedings, and that all the means pointed out by the act for the debtor to avert commitment, enure exclusively to the benefit of such creditor; yet, that when the debtor shall be discharged by petition and assignment, such assignment shall be for the benefit of all his creditors rateably. This construction is certainly in opposition to the general tenor of the act. Without the clearest light, therefore, to be drawn from its provisions relating to the petition and assignment, I should hesitate long to adopt a construction that would totally destroy its efficacy as a remedial statute, and leave men to make fraudulent dispositions of their property, and to contract debts without the least means of coercing their payment. I see nothing, however, in those sections, relating to the petition, assignment and discharge, which imperatively calls for such a construction. The twelfth section provides that the debtor who may be committed to prison at the suit of the prosecuting creditor, or who shall have given a bond to avert commitment on the complaint of such creditor, conditioned that he will, within thirty days from conviction, apply for an assignment of all his property and for a discharge, or against whom any suit shall have been commenced in a Court of Record, in which such debtor, by the provisions of the act,

cannot be arrested or imprisoned, may petition that his property may be assigned, and that he may have the benefit of the provisions of the act.    The only benefit that the act confers, and for which he may pray, is to be exonerated from being proceeded against under those sections which relate to his arrest and conviction for any fraud committed or intended before his discharge, by any creditor entitled to a dividend of his estate.    The only creditors in a situation to proceed against him under the act, at the time of the debtor's application, are those enumerated in this section, and they are consequently the only persons whose rights are to be immediately affected. Their relation to the debtor assimilates to that formerly sustained by creditors who had charged in execution the person of their debtor.    The petition is not that he may have a discharge that shall exonerate him from being proceeded against by all creditors ; for if this were so, the debtor would receive a discharge as against all not in a situation to pursue the proceedings under the act, without notice to them.    By the thirteenth section, the debtor, on presenting his petition, is to deliver an account of his creditors, and an inventory of his estate, similar, in all respects, to the account and inventory required of a debtor by the sixth article, of title first, of chapter five, of the second part of the Revised Statutes ; and shall annex to such petition, account and inventory, an affidavit similar, in all respects, to the oath required by the fifth section of such article.    Now, this sixth article provides for a proceeding on the part of the debtor which shall enure to the benefit of the prosecuting creditor or creditors alone, and the inventory is unlike that to be made when such debtor assigns, under the third and fifth articles of the same chapter, for the benefit of all his creditors.    But the Chancellor thinks "that the person who drew the act, probably by inadvertence substituted the sixth for the fifth article, as the thirteenth section of the act of 1831 provides that the debtor shall deliver an account of his creditors, and an inventory of his estate similar, in all respects, to the account and inventory required by the sixth article, and by the sixth article no ac-

Spear *v.* Wardell.

count of creditors is required to be annexed to his petition."
I should certainly be unwilling to rest a construction of this
section, and as a consequence possibly the act itself, on a sup-
posed "inadvertence" of the framer of the law, or of the Le-
gislature that passed it.   By the sixth article, the debtor must
set forth in his petition "the cause of his imprisonment,"
which, of course, would embrace the name or names of, and
the sum or sums due to, the creditor or creditors at whose suit
he is imprisoned, and who only are interested, and this would
be informally " an account of his creditors."   I understand
the requirement of the thirteenth section of the act to be,
that the debtor shall deliver an account, not of *all* his credi-
tors, but of those mentioned in the twelfth section who have
pursued or may pursue him to a conviction under the ninth
section.   If the reference to the sixth article be incorrect,
then either no affidavit would be required, or one varying es-
sentially from that prescribed in such article.   By the third
and fifth articles of the chapter of the Revised Statutes re-
ferred to, the debtor is to make oath, substantially, that he
has not preferred any of his creditors with a view to obtain
the prayer of his petition, or "with the view that they should
abstain or desist from opposing his discharge;" but such is
not the nature of the oath required by the sixth article, where
the question of preference as to creditors generally does not
arise, and where the debtor's discharge, as in the third and
fifth articles, cannot be denied for giving such preference.
Instead of the thirteenth section incorrectly referring to the
sixth article, I think such reference is in harmony with the
objects and aim of the act as developed in the preceding sec-
tions; and instead of having, as the Chancellor concludes,
"no particular bearing upon the question as to who is to take
the beneficial interest in the assigned property under the as-
signment provided for in the sixteenth section," it furnishes
a strong foundation for the opinion that the Legislature did
not intend that such assignment should enure to the benefit
of all the assignor's creditors rateably.   For had such been
the intention, the inventory and oath would doubtless have

been assimilated to those, in cases under our insolvent laws, which contemplate such a result, and which look, in such inventory and oath, and in all other proceedings, to securing equality of distribution amongst creditors. The discharge, by the seventeenth section, only operating against a particular class of creditors, there was a propriety in assimilating the proceedings to a branch of the existing insolvent laws, whose operation was of a similar character.

The fifteenth and sixteenth sections of the act, regulate the proceedings on the debtors petition; and direct that if at the hearing the opposing creditor shall fail to satisfy the officer that such proceedings are not just and fair, or that he has concealed, removed or disposed of any of his property with intent to defraud his creditors, such officer shall order an assignment of all the property of the debtor in the same manner as provided in the fifth article, of the first title, of the fifth chapter of the Revised Statutes, except such as is therein exempt; which assignment shall be executed with the like effect as declared in such article, and shall be recorded in the same manner. By an examination of the fifth article it will be found that the only effect declared therein is "to vest (by the assignment) in the assignees all the interest of such insolvent at the time of executing the same, in any estate or property, real or personal, whether such interest be legal or equitable." It no where declares who are to be the distributees under the assignment. It would seem that the reference to the article is simply for the purpose of ascertaining what property the assignment passes, and the period from which it relates. I cannot avoid the conviction, that if the intention had been to determine who were to be the distributees, the Legislature would have referred to those sections of the insolvent laws specifically regulating that subject; and I am not disposed, with the view of establishing a particular theory of distribution, to argumentatively incorporate into the article referred to, a provision of another article, which, in accordance with my view of the general object and intent of the act of 1831, the Legislature designedly omitted.

The eighteenth section provides that the assignees to whom the assignment shall be made, shall be vested with all the rights and powers over the property so assigned which are specified in the eighth article, of the first title, of chapter five, of the second part of the Revised Statutes, and shall be subject to the same duties, obligations and control in all respects, and shall make dividends. The only section in the eighth article which directs as to distribution, provides a different mode in proceedings under each of the articles of the title. Under the third and fifth articles, the distribution is to be among all who were creditors at the time of the execution of the assignment; under the sixth article, among those at whose suit the debtor was imprisoned on execution at the time of his discharge. So that the eighth article throws no light on the question of distribution.

It is apparent that if the Chancellor's construction of the 16th, 17th and 18th sections of the act of 1831, be the only "sensible" one, viz : that the assignee takes the property of the debtor as a trustee for the benefit of all the creditors of the assignor rateably, then the discharge should exempt the debtor from arrest or imprisonment generally; but such certainly is not the intent of the act. The seventeenth section specifically declares the effect of the discharge. It is, that for any fraud committed or intended before such discharge, the debtor shall be exonerated from being proceeded against under those sections which authorize his arrest and conviction by any creditor entitled to a dividend of his estate; not that he shall be exonerated from arrest and imprisonment by *all* creditors, but clearly, by reasonable construction of language, by those creditors only, who, before such discharge, were entitled to proceed against them under the act. No creditor unless he had commenced a suit or obtained a judgment or decree could proceed; and it is against the proceedings of such creditors alone that the discharge operates. Its operation cannot be against all creditors. The Legislature could not have intended to conclude creditors by proceedings of their debtor, of which proceedings they were not to have notice. If this were so, a

debtor in collusion with a friendly prosecuting creditor might fraudulent pursue the provisions of the act to an assignment and discharge, and other creditors, without notice, be bound by his proceedings.    If, therefore, the discharge, which is the. fruit of the assignment, is only to operate against those creditors who may pursue the provisions of the act, that would seem to follow, which is but equity, that the distribution of the debtor's property should be among those affected by it. This is a principle always heretofore acted upon in the distribution of the estates of insolvents, and on no other principle can equity be done.    In a case under this act, if the principle of equality of distribution amongst all creditors should govern, the effect would be that a certain class of creditors whose remedy, by coercion was gone, would but receive rateably with others to whom it was continued ; and whilst the right of the particular creditors specified in the second section of the act to imprison the debtor remained, they would also, under a remedy not given to them, become distributees rateably of his property.    This, in respect to the means provided for enforcing payment from a fraudulent debtor, would not be that "equality among creditors" which, under other circumstances, is declared to be equity.

An attentive consideration of its provisions has led me to the conclusion, that the intent of the act of 1831, was, after abolishing imprisonment for debt in suits arising upon contract to provide a remedy for those immediately effected by such abolition, through which they might reach the fraudulent debtor's property, to satisfy their demands ; that the proceedings taken under such act enure to the benefit of the prosecuting creditors exclusively ; that by initiating and pursuing the remedy prescribed by it, they acquire a right of priority or preference in the distribution of the debtor's estate ; and that neither expressly or by implication is there any authority for such distribution amongst creditors generally, but the whole scope and tenor of the act is in opposition to it.    I am, therefore, of the opinion that a voluntary assignment by the debtor of all his property for the benefit of his creditors gen-

Spear *v.* Wardell.

erally, pending the proceedings against him, and in order to defeat the prosecuting creditor's preference of payment out of such property, is a fraud upon the act of 1831, and upon the rights of such prosecuting creditor.

In the present case, after the arrest on the complaint of the appellants, and pending the proceedings against them, the respondents, Charles Wardell and Charles E. Wardell, executed an assignment to Henry B. Wardell, of all their co-partnership property and effects to pay all their creditors rateably, and Charles Wardell, also, at the same time, assigned to Henry B. Wardell all his individual property, in trust, to pay his individual creditors rateably, and then to apply the surplus to the payment *pro rata* of the creditors of the firm. The whole of the property at the date of the assignment was delivered to the assignee, who now holds and refuses to make any disposition of it, or the proceeds thereof, otherwise than upon the terms expressed in assignment to him.    The respondents, in their answer admit that the assigned property is much more than sufficient to pay the demand of the appellants. These assignments were made in fraud of the act, and of the rights of the appellants acquired thereunder ; and it is plainly to be perceived, were so intended by the respondents themselves.    For if, as they now contend, the statutory assignee would take for the benefit of all creditors, why, pending the proceedings, voluntarily make assignments having the like effect?    Nothing can be more undoubted than that the respondents contemplated a fraudulent interference with the statutory assignment.

On the main question, therefore, I am of the opinion that that the decree of the Chancellor is erroneous, and should be reversed.    With regard to the mode in which relief shall be granted to the appellants under the circumstances of this case, my views fully accord with those expressed by my brother Bronson.

BRONSON, J.    The first question is, whether the assignment which a debtor executes under the non-imprisonment

law, (*Stat.* 1831, *p.* 400, § 16–17) is for the benefit of all his creditors; or whether the assigned property goes exclusively to the creditor who instituted the proceedings. The Chancellor had considered this as an open question; but as I understand the authorities, it had been settled, so far as the Supreme Court could settle it, that the property goes to the particular creditor who compelled the assignment, to the exclusion of all others, until his debt is paid. The proceeding is nothing more than a statute execution which reaches property not subject to seizure by *fieri facias*, and such as, through the fraud of the debtor, either has been, or is in danger of being placed beyond the reach of ordinary process. The question was considered in *The People* vs. *Abel*, (3 *Hill* 109,) and though not then decided, I well recollect that there was no diversity of opinion among the Judges on the subject. And in *Bartholomew* vs. *Betts*, (4 *Hill* 577,) the point was necessarily decided; for if the act of 1831 is an insolvent law, its operation was suspended by the bankrupt act at the time the creditor in that case instituted proceedings to compel an assignment; and it clearly is an insolvent law, if an assignment under it is made for the benefit of all the creditors. It was therefore necessary to decide the question; and the Court held, that the act of 1831 was not an insolvent law, but only a new remedy in favor of a creditor who had commenced a suit, or recovered a judgment against the debtor. *Moak* vs. *De Forrest*, (5 *Hill* 605,) holds the same doctrine. And so far as I have been able to learn, the non-imprisonment law has uniformly received this construction among those who have administered it, from the time of its enactment in 1831, down to the time this case was decided in August last. I do not think it necessary to add any thing on this branch of the case further than to say, that the high respect which I always feel for the opinions of the Chancellor has induced a careful re-consideration of the question, which has resulted in confirming my former opinion.

The defendants, in the judgment were arrested on the warrant and taken before the Circuit Judge on the fifth of No-

Spear v. Wardell.

vember; and after several adjournments, the Judge, on the 28th day of that month, decided that the allegations of the complainants were substantiated; that the defendant had rights in action and evidences of debt which they had unjustly refused to apply to the payment of the judgment, and that a commitment must issue in pursuance of the 9th section of the act. Pending the proceedings, and on the 21st day of the month, the defendants in the judgment made a voluntary assignment of all their property to the defendant Henry B. Wardell, the son of the defendant Charles Wardell, in trust, to apply the avails of the property, after satisfying the expenses of executing the trust, for the benefit of all the creditors, without any preference. The value of the property thus assigned greatly exceeded the debt of the complainants; but was not enough to pay all the creditors: and in consequence of this assignment the defendants in the judgment had no estate to insert in their inventory when they afterwards applied to the Judge for a discharge under the act, for the purpose of preventing the commitment which had previously been ordered. Now although the complainants acquired no lien upon the property by commencing proceedings under the act, they acquired the right to a preference over the other creditors, which could not be defeated by a voluntary assignment; and the transfer of the property to Henry B. Wardell was a fraud upon the law, and the complainants, which a Court of equity should not permit to succeed. (*Wood* vs. *Bolard*, 8 *Paige* 556, matter of *Hurst*, 7 *Wend.* 239; *Hadden* vs. *Spader*, 20 *John.* 554; *McDermutt* vs. *Strong*, 4 *John Ch.* 687.) The Chancellor would, I presume, have felt no difficulty in granting relief, if he had not come to the conclusion that the assignment under the statute was for the benefit of all the creditors.

If the complainants had obtained a lien on the property by commencing proceedings under the statute and the title had vested in Nash the statute assignee, he would then have been a necessary party to the bill. But as their was no lien, the legal title to the property passed to the defendant Henry B.

21

Wardell under the voluntary assignment ; and so long as that assignment stands, Nash has no interest which can make it necessary for him to join with the complainants in a bill for the assertion of their rights. If we should set aside the voluntary assignment, and thus subject the property to the operation of the statute assignment, then Nash might be a necessary party. But there is no occasion for setting aside the voluntary assignment. It covers a large amount of property beyond what is necessary to pay the debt of the complainants, and they are the only creditors who are entitled to a preference. The proper course, having regard to the rights and interests of all the creditors, will be, to declare that Henry B. Wardell holds the assigned property as a trustee for the complainants to the extent of their debt, and make a decree that he pay the same. In this view of the case Nash has no interest, and the objection that he should have been made a party must be overruled.

I am of opinion that the decree of the Court of Chancery should be reversed ; and that a decree should be entered in favor of the complainants, as above suggested. They should also have costs in the Court of Chancery.

Decree accordingly.