By the Court.
Woodruff, J.
[After stating the facts.]— The relator asserts that the affirmance by the general term is erroneous on two principal grounds, to wit: That the act in pursuance of which he was arrested and committed, has been superseded by subsequent legislation embraced in the Code of Procedure; and that certain proceedings had, after such commitment, before the city judge, under an act entitled “ Of voluntary assignments by an insolvent for the purpose of exonerating his person from imprisonment,” passed in 1813, amended in 1819, and re-enacted in the Revised Statutes which took effect January 1, 1830 (2 B. 8. 28), for an assignment of his estate for the benefit of his creditors, and an exemption of his body from arrest or imprisonment, and the discharge therein granted, constitute a discharge " according to law,” within the terms of the commitment and within the meaning of the act in pursuance of which he was arrested and held.
The zeal and ability with which these grounds of alleged error have been argued, and the considerations suggested regarding the duration of the relator’s imprisonment, if they are not sustained, entitled the relator to a patient hearing, and a *554 very careful examination of the subject. And yet, after such hearing and examination, I was not able to entertain a doubt that is is our duty to affirm the judgment of the supreme court.
First. The subsequent legislation which is claimed to supersede the act of 1831 is contained in title 7 of the Code of Procedure, and particularly chapter 1 of that title, — which treats of “ arrest and bail,” — which presents various cases in which a defendant in a civil action may be arrested and held to bail, and it includes, among many others, each of the cases, substantially, in which the arrest and commitment were authorized by the act of 1831.
But the very first section of the chapter, while it declares that no ¡verson shall be arrested in a civil action, except as provided by this act, adds explicitly, “ but this provision shall not affect the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed April 24,1831, or any act amending the same.”
This would seem a very distinct saving of the act of 1831, and in its full force in all its details and provisions.
It has been suggested that the subsequent details of the chapter, giving a party arrested, when the debt was fraudulently contracted, a right to a discharge from arrest on giving bail, and other particulars, are inconsistent with the act of 1831, and therefore in all cases in which the grounds of arrest are identical, the latter statute has made complete provision, and should be held to be a substitute for the former.
The short but decisive answer is, that this is a clear reversal of the order of procedure, and the rule in legal effect declared by the legislature. When it was declared that the latter act shall not affect the former, the declaration means, and can mean no less than this, the former act shall stand in full forcé and effect, notwithstanding anything herein contained; if there be any apparent incongruity in the several provisions of the two enactments, the former statute, in the cases to which it relates, and not the latter, shall prevail.
I do not see, however, that any inconsistency or incongruity exists. In a certain class of cases, by the act of 1831, a debtor may be arrested and committed without bail.
*555 In a more general statute providing for the arrest, not only of a debtor but a tort-feasor, the legislature has seen fit to authorize plaintiffs in certain specified cases to elect whether to proceed under the act of 1831 by warrant and commitment, or to proceed by order lor arrest and bail.
But without pursuing this point into any detailed examination of the various provisions of the act to establish a Code ot Procedure, it is enough to say that when the legislature, in the enactment itself, declare that it shall not affect the act of 1831, no court is at liberty to say it does affect it, and that it supersedes that act.
It is, however, proper to add, that this court has in two cases recognized the continued operation of the act of 1831 since the Code was enacted. Hall v. Kellogg, 12 N. Y. 325; Cobb v. Harmon, 23 Id. 148.
Second. The other ground insisted upon by the appellant raises the question:- In what manner may a debtor arrested and committed under the act of 1831, procure a discharge from imprisonment? To that question the statute itself gives an explicit answer.
“ Any defendant committed as above provided shall remain in custody in the same manner as other prisoners on criminal process, until a final judgment shall have been rendered in his favor, in the suit prosecuted by the creditor, or . . . until he shall have assigned his property and obtained his discharge as provided in the subsequent sections of this act.” . . . Section 11.
Payment of the debt, or giving certain prescribed security therefor, and giving certain bonds, are also modes of relief mentioned, but these are not material to the present discussion. The important declaration is, that he shall remain in custody in the same manner as other prisoners on criminal process until he does one of the things mentioned.
If there was any other statute at that time in existence by-virtue of which insolvent debtors might obtain their discharge from imprisonment, this statute, declared in terms to be “ to punish fraudulent debtors,” forbids that, from the commitment therein provided, there shall be any discharge except in the manner therein specified.
*556 It would not be profitable to dwell upon the reasons moving the legislature to punish fraud, and to treat the fraudulent debtor as a criminal, or to inquire whether it is reasonable to punish a fraudulent debtor with more severity than any other willful wrong-doer, nor whether it is equitable that a creditor who pursues his fraudulent debtor should thereby receive, through the assignment therein provided for, a priority over other parties who have suffered wrong at his hands.
It is, however, pertinent to say, in answer to any suggestion of hardship to the debtor, that it is in no sense harsh or inequitable to him to require, as a condition of relief from the punishment intended by the statute, that he make the assignment therein provided for.
Whether a proceeding under the act in question will secure priority of payment to the pursuing creditor, concerns him less than the creditors themselves. But if such preference is thereby secured, that is of itself a conclusive reason why he shall not be permitted, of his own motion, to defeat it.
In this view, the decisions of this court in Spear v. Wardell, 1 N. Y. 144, and Hall v. Kellogg, 12 Id. 325, ought, I think, to be deemed conclusive.
In the first of these cases this court declared that the pursuing creditor does not obtain a preference or priority of payment out of the property of the fraudulent debtor.
Counsel on this appeal ask us to reconsider that decision. The decision was made after a most deliberate and critical examination and review of the act, and, so far as appears, the court were unanimous in their judgment, and the subject has been again considered in Hall v. Kellogg, in which this court not only concur, but declare that the decision in that case, in connection with others in the late supreme court, should be deemed to settle the question, and the court thereupon proceed to declare the equities among several pursuing creditors under this act.
These cases settle the law that a fraudulent debtor thus pursued cannot by his own act defeat the right of priority which the pursuing creditor has acquired.
When, therefore, the act of 1831 declared that a defendant committed shall remain in custody until discharged as pro- *557 Tided in its subsequent sections, it qualified the act of 1813 (2 R. S. 38), by creating an exception to its otherwise general operation.
The act of 1813 prescribed a general rule. It was enacted when, as a general rule, all debtors were liable to arrest and imprisonment. The act of 1831 declared a new rule. Under it, the general rule is, that no debtor shall be imprisoned, but the exception is affirmatively and explicitly made that to punish fraud, the fraudulent debtor may be taken on warrant and co unfitted, and he shall be held in custody as other criminals until he complies with its further requirements.
Nor is the reasonable and humane sentiment that no man shall be deprived of his liberty because he is unable to pay his debts, violated. The statute does not purport to imprison for debt, but to punish for an offense. In saying this, I do not overlook the fact that the object of the act in these provisions is to furnish a stringent remedy to enforce the collection of the debt, and that payment of the debt entitles the prisoner to his discharge.
Now, there are cases which held that the process is not strictly a criminal process, as the term is used in our statutes. In Lynde v. Montgomery, 15 Wend. 461, it was held for certain purposes to be criminal process. In Moak v. De Forrest, 5 Hill, 605. it was held that it was not criminal process within the acts which authorize the sheriff of a particular county to execute it in any part of the State. That although in some respects in the nature of a criminal proceeding it is in substance a civil remedy. See, also, Exp. Fleming, 4 Hill, 581. This does not render it less certain that the legislature intended to punish the fraudulent debtor, and so, by the language used,' declared such intent. They were relieving the honest debtor from liability to imprisonment, making loss of liberty no longer the consequence of inability to pay, and they intended, and did at the same time declare, that the fraudulent debtor should be imprisoned, and that he should be held in custody until he complied with certain requirements. They intended to punish the fraudulent debtor, and did provide for punishing the fraudulent debtor, by a clear discrimination between him and the honest man, and by making such punish *558 ment continue until be made the satisfaction which was prescribed as the condition of his discharge. These consequences, punitory in a just sense as to the fraudulent debtor, are made the means, at the instance of the creditor, of compelling that satisfaction ; and, in that sense, the proceeding both punishes the debtor and is made the instrument of enforcing the civil right of the creditor.
Great stress has been laid by the appellant upon the words of section 9 of the act, viz: that “If such officer is satisfied that the allegations . . . are substantiated ... he shall by a commitment . . . direct that such defendant be committed to the jail of the county .... to be there detained until he shall be discharged according to lato”
And with no little ingenuity and ardor, it is insisted that this only warrants his detention until by some law, including any prior act by which exoneration from imprisonment for debt may be obtained, he have obtained a discharge. If this section could be construed to determine at all the effect of a commitment and the duration of the imprisonment to which it subjected the defendant, it would still be true that the same act declared that, being so committed, he shall be held in custody until he comply with its subsequent provisions; and as a necessary result, section 11 modifies any and every other prior law according to which a discharge might be claimed, if any there were. And it is here apt to say that in fact there was no prior law providing for the discharge of a debtor held in custody for his fraud in contracting a debt or disposing of his property to defraud his creditors and to punish that fraud. No imprisonment of that nature and for that punishment had before been provided for, and therefore no proceeding had Deen provided warranting a discharge of a prisoner held for the wrong. “According to law” would therefore have had no meaning unless the legislature had provided a law according to which he might be discharged. The act of 1813 was enacted diverso intuitu. It provides for the exoneration of an insolvent debtor from imprisonment “ by reason of any debts.” When the fraudulent contracting of a debt, or the removal or disposal of property to defraud creditors, was made by the legislature a new and specific cause of imprisonment, the act of 1813 had no *559 application to the case, and furnished no warrant of law for a discharge therefrom.
Apart from this, the argument of the appellant is based upon this obvious error; it makes section 9, which merely prescribes the duty of the officer and the form of the commitment, determine the effect of the commitment itself.
That section simply describes the instrument or process which the officer shaU issue under his hand and seal; that process must in form direct “that the defendant be committed to the jail of the county . . . . to be there detained until
discharged according to law.” The duty of a sheriff receiving a defendant under such a commitment is clearly defined in the subsequent sections, viz: to keep him in custody until he complies with those, sections.
The judgment appealed from should be affirmed; and, under the provisions of sections 320 and 318 of the Code, such affirmance should he with costs to be charged against the relator for whose benefit the proceeding was prosecuted, if the decision of Justice Barítard in the proceedings by habeas corpus which were brought into the supreme court for review is to he deemed “the decision of a court of inferior jurisdiction.” At the last term we held that an order made by the board of the metropolitan police was not the decision of “a court” of inferior jurisdiction within section 318.* Here the habeas corpus was returnable before a judge out of court; the process was likewise out of court; the decision and order therefrom were made and signed by him, and were not entered as the decision or order of the court.
The question of costs was not argued, nor was our attention in any manner called to the subject, or to any law warranting the allowance of costs on certiorari sued out by the people. I have not found any authority for such allowance. Unless my brethren are better informed on that subject, and deem the allowance proper, the judgment should be affirmed, except as to the award of costs, and without costs on appeal.†
*560 I desire to add that no point has been made by the respondent, that these proceedings are only reviewable in this court by writ of error, and that they are not regularly brought here by appeal. In considering the merits I have, no doubt, met the wishes of counsel who desire a decision of the questions raised. I allude to this merely to prevent any conclusion that by .this decision we design to pass upon the point suggested.
All the judges concurred.
Judgment reversed as to award of costs; affirmed as to residue, without costs on appeal.

The decision referred to is that of People v. Board of Police, 39 N. Y. 506.

 Costs are now allowed. See People ex rel. Van Rensselaer v. Van Alstyne, p. 575 of this vol., and note.