MARTIN MAAS, Respondent, *v.* JAMES O'BRIEN, Sheriff, etc., Appellant.

*Imprisonment under non-imprisonment act of 1831 — effect of proceedings in bankruptcy upon.*

On the 21st of December, 1867, one Latorre was arrested by the sheriff on a warrant issued under the non-imprisonment act of 1831. On December 31st, proceedings in bankruptcy were instituted against Latorre; on January 11th, 1868, he was declared a bankrupt, and on February 4th of that year all his estate was transferred to an assignee in bankruptcy. In an action against the sheriff to recover damages for an escape of the prisoner which occurred in June, 1868, *held,* that the pending proceedings under the non-imprisonment act were

so far as the assignment for the discharge of Latorre from imprisonment was concerned, legally superseded by the adjudication in bankruptcy and the proceedings subsequent thereto; that even though he had not availed himself of the discharge to which he was entitled, but remained in custody at the time of the escape, that plaintiff was not entitled to recover damages therefor. *Queare*, whether in an action for an escape the sheriff could insist that the warrant upon which the prisoner was committed was void, because issued before any action had been commenced against him.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*A. J. Vanderpoel*, for appellant.

*A. R. Dyett*, for respondent.

DAVIS, P. J.:

This is an action against the sheriff for the voluntary escape of one Raymond S. Latorre, imprisoned in the county jail upon a warrant issued under the non-imprisonment act of 1831. The escape was in the act of a deputy-sheriff taking the prisoner from jail about the first of June, 1868, to the place of business of a third party in the city of New York, to enable him to make efforts to be discharged upon a compromise of his debts, and immediately thereafter returning him to the county jail where he in fact remained imprisoned until he was regularly discharged upon application to the court under the insolvent laws.

The first question urged upon our attention is that Latorre was not held under legal process; and this is made upon the alleged ground that the warrant under the non-imprisonment act, upon which he was originally arrested, was issued by the judge before the commencement of an action against Latorre. On being arrested Latorre was brought before the judge who issued the warrant, and failing to controvert any of the allegations of the affidavits upon which the warrant was issued, he was committed by the judge in conformity to the provisions of the non-imprisonment act. He made no question as to whether or not the warrant was issued before the commencement of the suit, and by his

neglect to raise the question at that time must be regarded as having conceded that the process was regularly issued. The writ of committal on which the sheriff held Latorre was based upon the proceedings had at the time of the return of the warrant of arrest, in which it was recited amongst other things that an action had been commenced before the issuing of the writ. The sheriff's duty was to execute that process by detaining Latorre in his custody, and it is very doubtful whether after allowing an escape he could be permitted to go behind the process under which he held Latorre for the purpose of assailing the original warrant upon which Latorre was arrested, by raising a question which relates merely to the fact that the suit had not been properly commenced. We do not think it necessary, however, distinctly to pass upon that question, because there seems to us to be in the case another question, which effectually disposes of the appeal.

Latorre was committed to prison on the warrant of committment on the 21st of December, 1867. On the 31st of December, 1867, certain creditors of Latorre filed a petition in bankruptcy in the District Court of the United States for the southern district of New York, and such proceedings were thereupon had, that on the 11th of January, 1868, Latorre was adjudged a bankrupt, and a warrant of seizure to the marshal, and notice to creditors, and all the various steps resulting in an assignment on February 4th, 1868, to the assignee, elected in bankruptcy, of Latorre's estate, took place. At the time he was adjudged a bankrupt, Latorre, under the eleventh section of the non-imprisonment act, was required to remain in custody until a final judgment should have been rendered in his favor in the suit prosecuted by the creditor at whose instance he had been committed, or until he should have assigned his property and obtained his discharge as provided in the subsequent sections of that act.

Such subsequent sections provide for proceedings on the part of the imprisoned debtor resulting in an assignment to one or more assignees by the prisoner, and declare that the assignees shall be vested with all the rights and powers over the property assigned specified in the eighth article, title one, chapter five of the second part of the Revised Statutes, and shall be subject to the same duties, obligations and powers, in all respects and shall

make dividends, etc., and that upon producing to such officer, evidence that such an assignment has been recorded, and the certificate of the assignees that all the property of such petitioner specified in his inventory has been delivered to them, or that he has given satisfactory security for the future delivery of the same, such officer shall grant to the debtor a discharge which shall protect him from being proceeded against by any creditor entitled to a dividend of the estate of such debtor under the several provisions of the non-imprisonment act and therein specially mentioned.

It is clearly manifest that these provisions are in direct conflict with the bankrupt act, and with the powers and rights of the creditors of the prisoner adjudged to be a bankrupt, and the result of this conflict is that the former must necessarily give way to the latter. The two assignments cannot stand together. They are in direct conflict with each other, and the assignee in bankruptcy would, we think, take the superior title. (*Sturges* v. *Crowninshield*, 4 Wheat., 122; *Matter of Goldstein*, 52 How., 426; *Goodwin* v. *Sharkey*, 3 Bank Reg. [2d ed.], 558; *Zeigenfuss Case*, 2 Iredell, 463; *Reed* v. *Taylor*, 4 N. Bank Reg. [2d ed.], 710, 712.) It has been held in various cases in this State; that the bankrupt act did not supersede the non-imprisonment act. (*Berthelon* v. *Beet*, 4 Will., 577; *Spear* v. *Wardell*, 1 Comst., 149; *Matter of Jacobs*, 12 Abb. [N. S.], 273; *Shears* v. *Solhinger*, 10 Abb. [N. S.], 237.) But these cases do not go so far as to hold that where an actual adjudication of bankruptcy has taken place upon petition duly filed in the court of bankruptcy, the provisions relating to the making of assignments for the discharge of the party from imprisonment for debt are not superseded. On the contrary, we think there is nothing inconsistent with these cases, in holding that the adjudication in bankruptcy does have that effect. An assignment under the non-imprisonment act is for the benefit of the individual creditor who has caused the imprisonment of the debtor, and not for creditors in general. (*Spear* v. *Wardell*, 1 N. Y., 144; *Hall* v. *Kellogg*, 12 id., 325.) And it seems to us that nothing can be more inconsistent than to hold that a person adjudicated a bankrupt, whereby in law all his property is transferred to an assignee in bankruptcy, can, under any circumstances, make an assignment under the non-

imprisonment act for the benefit of any individual creditor; the result is that the proceedings and adjudication in bankruptcy by operation of law, necessarily take away from the latter the power to comply with one of the conditions upon which he might be discharged from arrest under the committal; and in doing so the legal effect was to supersede the proceedings under the non-imprisonment act against him, and entitle him to his discharge. He was not even at liberty to pay the debt for which he was in prison, even if he had the means of doing so, because the legal title of all his property was transferred to the assignee in bankruptcy; and so it may, in truth, be said that nothing permitted to him by the provisions of the non-imprisonment act, as means of release was left, except the recovery of a final judgment on the trial of the action in which the warrant had been issued against him. Under such circumstances, it seems to us a plain duty to hold that the pending proceeding under the non-imprisonment act was legally superseded by the adjudication of bankruptcy and the proceedings subsequent thereto.

The court excluded all evidence of the proceedings in bankruptcy as a defense, except as far as they related to the question of damages. The alleged escape occurred in June, after Latorre had been adjudicated a bankrupt. If, at the time of his escape he was entitled to his discharge, he had not availed himself of it, but remained in custody, nevertheless the facts were receivable in evidence as affecting the right of the plaintiff to recover at all. They were received by the learned judge on the trial as affecting the measure of damages. If receivable for that purpose, it should have been held, we think, that at the time of the escape nothing beyond nominal damages could be suffered by the plaintiff, inasmuch as all property of every kind belonging to Latorre had become vested in the assignee in bankruptcy, and no acquisition of other property by him was shown. So that if it needed a mere formal proceeding to entitle Latorre to a formal discharge, yet the proof of his bankruptcy showed conclusively that no actual damage could have ensued to the plaintiff. The verdict in this case was for the sum of $3,339.53; but with the evidence of the proceedings in bankruptcy before the court, we think that there was nothing in the case that could justify such a verdict.

Questions are also raised as to the admissibility of Latorre's statements as to the property he had prior to his imprisonment, made after his imprisonment. That evidence was of doubtful propriety, in our judgment; but we are not disposed to consider the question, because we think a new trial must be granted upon the question above discussed.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BRADY J., concurred.

Present — DAVIS, P. J., BRADY and INGALLS, JJ.

Judgment reversed, new trial ordered, costs to abide the event.